**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SAAD ALHITI, ZAINAB ABDULJABBAR,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. DEPARTMENT OF STATE, KRISTI NOEM, Secretary of the Department of Homeland Security, MARCO RUBIO, U.S. Secretary of State, THOMAS BARRACK, Ambassador of the U.S. at the U.S. Embassy Akara, Turkey<br><br>Defendants. | Case No. 25-cv-04999<br><br>Judge Mary M. Rowland |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Saad Alhiti and Zainab Abduljabbar bring suit against Defendants U.S. Department of Homeland Security ("DHS"), Secretary of DHS Kristi Noem, ("Non-State Department Defendants"), U.S. Department of State, Marco Rubio, Secretary of State, and Thomas Barrack, the U.S. Ambassador to Turkey ("State Department Defendants"). Plaintiffs allege unreasonable delay by the government in the processing of Ms. Abduljabbar's visa application. *Id*. Plaintiffs seek relief under the Mandamus Act, 28 §1361, the Administrative Procedure Act (APA), 5 U.S.C. § 555(b) and §706(1), and the Fifth Amendment's Due Process clause to compel the government to adjudicate the application. [5] Defendants move to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

1

For the reasons stated herein, Defendants' Motion to Dismiss [18] is granted.

## I. Background

The following factual allegations taken from the operative complaint [5] are accepted as true for the purposes of the motion to dismiss. *See Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021). Additionally, because Defendants raise this motion under Rule 12(b)(6), the Court takes facts from "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

Plaintiff Saad Alhiti is a U.S. citizen who is engaged to be married to non-citizen Zainab Abduljabbar. [5] at ¶ 1. Alhiti filed a Form I-129F "Petition for Alien Fiance Visa" with the U.S. Citizen and Immigration Services (USCIS) and paid the required fee on February 7, 2023. *Id.* at ¶ 2. The petition was issued a receipt number and approved on November 28, 2023. *Id.* Once it was approved, the file was sent to the National Visa Center ("NVC") for processing. *Id.* NVC sent the file to the U.S. Embassy in Turkey on or about January 22, 2024. *Id.* The Embassy scheduled an interview shortly after. *Id.*

On May 3, 2024, Abduljabbar was interviewed at the embassy. *Id.* at ¶ 3. According to the complaint, at Ms. Abduljabbar's interview, she was informed that additional documentation was required. *Id.* at ¶ 4. Specifically, she was instructed to submit Supplemental Questions for Visa Application, Form DS-5535. *Id.* She submitted the required Form DS 5535 the next day, on May 4, 2024. *Id.* Attached to

2

Defendants' motion to dismiss is the declaration of Samuel McDonald, a U.S. Department of State attorney-adviser. [19-1] McDonald stated that on May 3, 2024, the consular officer refused Abduljabbar's application under INA § 221(g), 8 U.S.C. §1201(g). *Id.* at ¶ 7. The consular officer determined that Abduljabbar failed to demonstrate her eligibility for the visa, and additional security screening was required. *Id.*

Plaintiffs responded by attaching correspondence from the State Department. [21-2] (Exhibit B, Consular Electronic Application Center Screenshot). The text states:

> A U.S. Consular officer has adjudicated and refused your application…. If you were informed by the consular officer that ***your case was refused for administrative processing***, your case will remain refused while undergoing such processing. ***You will receive another adjudication once such processing is complete. . . .***

*Id.* (emphasis added).

On May 12, 2025, Plaintiffs brought this action to compel Defendants to explain the cause and nature of the visa's processing delay and accelerate the processing of Abduljabbar's visa application. [5].

Defendants move to dismiss pursuant to Federal Rule of Civil Procedure Rule 12(b)(1), arguing that (1) Plaintiffs lack standing, (2) the case is moot, and (3) consular non-reviewability makes this case non-justiciable. Defendants also move to dismiss pursuant to Rule 12(b)(6), arguing that (1) there is no legal entitlement to a visa, and (2) there is no due process interest in a non-citizen spouse's admittance into the United States.

## II. Standard

### A. Rule 12(b)(1) Legal Standard

"In evaluating a challenge to subject matter jurisdiction, the court must first determine whether a factual or facial challenge has been raised." *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). There are two types of standing challenges: "A facial challenge attacks standing on the pleadings, arguing that the plaintiff lacks standing even if the well-pleaded allegations in the complaint are taken as true. A factual challenge, by contrast, asserts that there is in fact no standing." *Flynn v. FCA U.S. LLC*, 39 F.4th 946, 952 (7th Cir. 2022) (citation omitted).

"[I]n evaluating whether a complaint adequately pleads the elements of standing, courts apply the same analysis used to review whether a complaint adequately states a claim: 'Courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.'" *Silha*, 807 F.3d at 173 (alterations accepted) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)). "[W]hen evaluating a facial challenge to subject matter jurisdiction under Rule 12(b)(1), a court should use *Twombly–Iqbal*'s 'plausibility' requirement, which is the same standard used to evaluate facial challenges to claims under Rule 12(b)(6)." *Id.* at 174.

However, when a defendant challenges subject matter jurisdiction on mootness grounds, the defendant bears the burden of establishing that a court no longer has jurisdiction. *West Virginia v. EPA*, 597 U.S. 697, 719 (2022).

4

### B. Rule 12(b)(6) Legal Standard

"To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)); *see also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). A court deciding a Rule 12(b)(6) motion "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] all well-pleaded facts as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Lax*, 20 F.4th at 1181. However, the court need not accept as true "statements of law or unsupported conclusory factual allegations." *Id.* (quoting *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021)). "While detailed factual allegations are not necessary to survive a motion to dismiss, [the standard] does require 'more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action to be considered adequate." *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (quoting *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016)).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Deciding the plausibility of the claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th

Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

### III.   Analysis

#### A. Article III standing and mootness.

Defendants contend Plaintiffs have not alleged facts demonstrating that they have Article III standing. Here, Defendants raise external facts to question the Court's jurisdiction to challenge Article III standing. *See* [19] at 7–8. Thus, the Court treats Defendants' motion as a factual challenge, not a facial challenge. To establish Article III standing, a plaintiff must demonstrate that he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *Fox v. Dakkota Integrated Sys.*, LLC, 980 F.3d 1146,1151 (7th Cir. 2020).

Defendants argue Plaintiffs lack standing because no named defendants can redress their asserted injury of unreasonable delay regarding visa applications. [19] at 7-8. Plaintiffs respond that they have standing because Defendants have not completed the adjudication of Abduljabbar's visa application and that Defendants confuse jurisdiction with mootness. [21] at 3-4. Plaintiffs fail to address the distinction between the State Department as opposed to non-State Department defendants.

#### 1.  Non-State Department Defendants: DHS and Secretary of DHS Noem

Here, Plaintiffs allege that DHS is the agency "responsible for implementing the applicable provisions of the law [the INA and the APA] and assisting with background and security checks", and Secretary Noem is sued because she is the

6

highest-ranking official within DHS. [5] at ¶¶ 9, 12. However, courts in this district and beyond have found that "plaintiffs seeking adjudication of their *visa applications*, after USCIS forwarded their application to the U.S. Consulate, lacked standing against. . . . DHS because those defendants already *completed their role* in the visa application process." *Arif,* 2025 WL 1866661 at *4 (emphasis added) (citing *Salem v. Noem*, 2025 WL 1567864, at *4 (N.D. Ill. June 3, 2025); *Shamim v. Rubio*, 2025 WL 1399166, at *2 (N.D. Ill. May 14, 2025)); *see also Al-Gharawy v. DHS*, 617 F. Supp. 3d 1, 10 (D.D.C. 2022).

As an initial matter, Plaintiffs do not respond to this argument and thus waive any argument. Moreover, the Court agrees that Plaintiffs lack standing to sue the DHS Defendants, because it is the State Department *alone* that can decide to issue the visa. *See e.g. Khan v. Blinken*, 2021 WL 5356267, at *1 (D.D.C. Nov. 17, 2021) (describing the State Department's responsibility for determining K-1 visa issuance). Once DHS forwarded Abduljabbar's visa application to the State Department, the DHS Defendants completed their role in the process.

In sum, there are no allegations here that reasonably allege liability against the DHS Defendants. A "court may dismiss a defendant when the plaintiff fails to include allegations about the defendant's role in the adjudication of the immigration application." *Arif v. Rubio,* 2025 WL 1866661, at *3 (N.D. Ill. July 7, 2025) (citing *Alqrinawi v. Noem,* 2025 WL 1222651, at *1 (N.D. Ill. Apr. 28, 2025)); *Kulla v. Mayorkas*, 2024 WL 4188017, at *2 (N.D. Ill. Sept. 13, 2024); *Hasbani v. Noem,* 2025 WL 1103817, at *2 (N.D. Ill. Apr. 14, 2025)).

Accordingly, DHS and Secretary Noem are dismissed with prejudice for lack of standing.

### 2. State Department Defendants: State Department, Secretary of State Rubio, Turkish Ambassador Barrack

Turning to the State Department Defendants, Plaintiffs allege these Defendants "[are] and ha[ve] been complicit in the delay in processing Abduljabbar's visa application," ([5] at ¶ 23) and argue they can redress Plaintiffs' injuries by concluding the adjudication within a reasonable time ([21] at 3–4). Defendants disagree. They argue only a consular officer is authorized to adjudicate visa applications and Plaintiffs cannot point to any authority that makes the State Department Defendants responsible for matters that are statutorily beyond their respective areas of control. [22] at 5.

Defendants contend the INA bars the Secretary of State, the State Department itself, and the U.S. Ambassador to Turkey from adjudicating visa applications. [22] at 5. Under 8 U.S.C. § 1104(a), the Secretary is conferred with authority over "the administration and the enforcement of . . . immigration and nationality laws relating to . . . the powers, duties, and functions of the United States, *except those powers, duties, and functions conferred upon the consular officers relating to the granting or refusal of visas*." (emphasis added). Courts are divided as to whether that provision allows the Secretary to redress a visa plaintiff's claims. Although courts agree § 1104(a) precludes the Secretary from directing a particular outcome of the visa adjudication, courts routinely hold the Secretary, in his position as the head of the State Department, may exert control over the timing by which the consular officer

8

considers visa applications and may direct the consular officer to conclude such visa adjudications "within a reasonable time." *Al-Gharawy*, 617 F. Supp. 3d at 10 (quoting 5 U.S.C. § 555(b)); *see also Salem v. Noem*, 2025 WL 1567864, at *4 (finding standing for claims related to delayed visa adjudication against the Secretary of State); *Hamdan v. Oudkirk*, 2024 WL 4553983, at *4 (D.D.C. Oct. 23, 2024) ("In this case, where plaintiff does not challenge the consular officer's adjudication of his visa application but seeks instead only timely adjudication . . . nothing precludes [the Secretary] from directing the consular officers to decide [the] pending applications within a reasonable time, as the APA requires."); *Lee v. Blinken*, 2024 WL 639635, at *3 (D.D.C. Feb. 15, 2024) (holding that the Secretary can "direct[ ] consular officers to decide pending applications within a reasonable time").

Accordingly, the Court will continue its analysis of Plaintiffs' standing to sue the State Department Defendants.

### 3. Mootness

Defendants also argue the Court should dismiss Plaintiffs' complaint because a consular officer decided to withhold a visa from Ms. Abduljabbar in May 2024 and her application remains refused, thus the dispute is moot. [19] at 8–10. The Court disagrees.

Plaintiffs have not received a final decision on Abduljabbar's visa application. Plaintiffs received a response that provided more processing was required:

> A U.S. Consular officer has adjudicated and refused your application…. If you were informed by the consular officer that ***your case was refused for administrative processing***, your case will remain refused while undergoing such processing. ***You will receive another adjudication once such processing is complete.***

9

[21-2] (Exhibit B, Consular Electronic Application Center Screenshot) (emphasis added).

The Seventh Circuit has not yet addressed the issue of whether a refusal for administrative processing under Section 221(g) is final, but courts in this district have found the language cited above is not a final determination. In *Ebrahami v. Blinken,* 732 F.Supp.3d 894, 904 (N.D. Ill. 2024), the court found that the refusal was not final, reasoning that "the State Department's use of *will* in this communication all but guarantees the applicant another adjudication once administrative processing is complete." (emphasis added) (internal quotations omitted) (citing *Barazandeh* v. *U.S. Dep't of State*, 2024 WL 341166, at *5 (D.D.C. Jan. 30, 2024); *Kiani* v. *Blinken*, 2024 WL 658961, at *5 (C.D. Cal. Jan. 4, 2024) ("It is reasonable to infer that under this process that forthcoming decision is actually the final adjudication ..., and not a re-adjudication."); *Quiros* v. *Amador*, 2023 WL 4364161, at *4 (D.D.C. July 6, 2023) ("application clearly remains in administrative processing per the express language of the consular officials"); *Isse* v. *Whitman*, 2023 WL 4174357, at *1, *4–5 (D.D.C. June 26, 2023); *Giliana* v. *Blinken*, 596 F. Supp. 3d 13, 18–19 (D.D.C. 2022); *Billoo* v. *Baran*, 2022 WL 1841611, at *2–4 (C.D. Cal. Mar. 18, 2022) ("Department of State's own statements and instructions on their website ... demonstrate that [applicant] has not received a final determination on his visa application."). In *Arif*, the court similarly found the initial decision was not final, reasoning that "the government's communications clearly suggest further adjudication down the line". 2025 WL 186661, at *7. ("The phrases 'we will contact you when this is complete' and 'when we

10

let you know' on the worksheet suggest that the Consulate plans to act on Mr. Mumtaz's application in the future and that review of his application is incomplete.").

Here, the government's communication that Plaintiff Abduljabbar "***will receive another adjudication*** once . . . processing is complete" means her application's refusal is not final, but rather an ongoing adjudication. The cases the government cites, all of which involve *final* adjudications, are therefore distinguishable. The matter is not moot.

### B. The Consular Non-reviewability doctrine does not bar this case

Defendants argue that the doctrine of consular non-reviewability makes this case nonjusticiable [19] at 10. Plaintiffs respond that the doctrine is inapplicable because Plaintiffs are not challenging a substantive decision. [21] at 4.

The doctrine of non-consular reviewability "bars judicial review of visa decisions made by consular officials abroad." *Yafai v. Pompeo*, 912 F.3d 1018, 1020–21 (7th Cir. 2019) (quoting *Matushkina v. Nielsen*, 877 F.3d 289, 294 (7th Cir. 2017)). Where a consular's decision is not final, consular nonreviewability does not apply. *Arif*, 2025 WL 1866661, at *8.

Here, the doctrine is inapplicable. Defendants are correct that this case would be nonjusticiable if the State Department had issued a final decision refusing Ms. Abduljabbar's visa application. But that is not what happened. The case Defendants cite in support is inapposite. *Yaghoubnezhad v. Stufft*, 734 F. Supp. 3d 87, 102 (D.D.C. 2024) (consular officers' § 221(g) refusals are final).

### 4. Plaintiffs have failed to state a cause of action pursuant to FRCP 12 (b)(6)

11

### A. Mandamus relief is inappropriate

Plaintiffs request the "Court issue a writ of mandamus compelling Defendants to . . . . accelerate processing of the visa application." [5] at 7. (requests for relief).

District courts are granted the power "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. A writ of mandamus is "a drastic and extraordinary remedy reserved for really extraordinary causes." *United States v. Henderson*, 915 F.3d 1127, 1132 (7th Cir. 2019) (cleaned up). A court will grant a writ of mandamus where a petitioner shows: "(1) a clear right to the relief sought; (2) that the defendant has a duty to do the act in question; and (3) no other adequate remedy is available." *Calderon-Ramirez v. McCament*, 877 F.3d 272, 275 (7th Cir. 2017).

The third factor is dispositive because another remedy is available: the APA. Courts may compel agency action unlawfully withheld or unreasonably delayed under the APA. U.S.C. § 706(1)). Here, the APA's alternative remedy dooms the writ of mandamus. *Arif,* 2025 WL 1866661, at *9 (dismissing the petition for writ of mandamus). Accordingly, the Court declines to grant the writ of mandamus.

### B. There is no unreasonable delay under the APA

Defendants argue that the Plaintiffs' unreasonable delay claim is meritless because there is no statutory deadline under federal law by which a consular office must adjudicate a visa, and Plaintiffs' claims fail under the relevant case authority. [19] at 12-14. Plaintiffs respond that the case law supports finding that a fifteen-month delay is unreasonable. [21] at 6. The Court agrees with Defendants.

12

The Administrative Procedures Act, 5 U.S.C. § 555(b), provides that "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." District courts have the power to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). To evaluate claims of unreasonable delay, courts use the six-factor test from *Telecomms. Rsch. & Action Ctr.* ("*TRAC*") *v. F.C.C.*, 750 F.2d 70, 80 (D.C. Cir. 1984):

> (1) the time agencies take to make decisions must be governed by a "rule of reason"; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Id.* (cleaned up); *Menominee Indian Tribe of Wis. v. EPA*, 947 F.3d 1065, 1075 (7th Cir. 2020) (Hamilton, J., concurring) ("The D.C. Circuit has set forth a general framework for deciding claims of agency delay that courts can apply to unanswered rulemaking petitions."); *Orozco* v. *Blinken*, No. 22 C 5134, 2023 WL 4595377, at *2–6 (N.D. Ill. July 18, 2023) (applying six-factor "TRAC" analysis in this context). "There is no congressional imposed timeline for processing fiancé visa applications." *Mohammad v. Blinken*, 2021 WL 2866058, at *3 (D.D.C. July 8, 2021) (internal citation omitted). "To the contrary, Congress has given the agencies wide discretion

13

in the area of immigration processing." *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153–54 (D.D.C. 2017).

The first and second factors ask whether the agencies make decisions by a rule of reason and whether Congress has provided a timetable that is favorable for Defendants. *Telecomms. Research. & Action Ctr.*, 750 F.2d at 80. These factors are typically considered together because "they both analyze whether there is 'sufficient rhyme and reason to explain the Government's response time.'" *Mahmood* v. *U.S. Dep't of Homeland Sec.*, No. 21 C 1262, 2021 WL 5998385, at *7 (D.D.C. Dec. 20, 2021) (quoting *Dastagir* v. *Blinken*, 557 F. Supp. 3d 160, 166 (D.C.C. 2021)). Here, the first factor is satisfied because government agencies process visa applications in the order they are received, and the second factor is satisfied because the Court is not aware of any cases that have held a fifteen month, or even two-year, delay is unreasonable. *See Brzezinski v. DHS*, 2021 WL 4191958, at *5 (D.D.C. Sept. 15, 2021) (surveying case law, finding "no case that found an unreasonable delay when the delay was under two years[,]" and concluding 17-month delay not unreasonable); *see also Ghadami v. United States Dep't of Homeland Sec.*, 2020 WL 1308376, at *1–2, *8 (D.D.C. Mar. 19, 2020) (finding that a twenty-five month delay was not long enough to tilt the first two *TRAC* factors in favor of the plaintiff); *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 95 (D.D.C. 2020)) (holding that a twenty-five month delay is not unreasonable as a matter of law); *Ebrahami*, 732 F. Supp. 38 at 911 (twelve month delay so short as to counsel heavily against finding unreasonable delay); *Orozco*, 2023 WL 4595377, at *4 (same); *Arif*, 2025 WL 1866661, at *10 (twenty two months is not

14

an unreasonable delay). The first factor is the most important factor in the six-factor analysis. *In re Core Commc'ns, Inc.*, 531 F.3d at 855. Here, both the first and second TRAC factor weigh in favor of the Government.

The third and fifth factors look to whether "human health and welfare are at stake" and "the nature and extent of the interests prejudiced by delay." *Telecomms. Research. & Action Ctr.*, 750 F.2d at 80. These factors tilt in favor of Plaintiffs. Here, it is reasonable to determine that there is harm because Plaintiffs are engaged, and ongoing uncertainty "prevents Plaintiffs from planning their marriage, careers and family", causing "ongoing prejudice to their most fundamental personal interests." [21] at 5; *See also Brzezinski*, 2021 WL 4191958, at *5 ("[T]he loss of consortium and general diminishment in quality of life for the engaged couple nonetheless tilt these factors somewhat in Plaintiff's favor."). Here, the third and fifth factors weigh in favor of Plaintiffs.

The fourth factor requires the Court to consider the effect of expediting delayed action on "agency activities of a higher or competing priority." *Telecomms. Research. & Action Ctr.*, 750 F.2d at 80. This weighs in favor of the government. Indeed, courts have found "where compelling an adjudication for one party would prejudice others who also await final decisions on their visa applications, the fourth factor weighs in favor of the government and is, at times, all but controlling in the unreasonable-delay analysis." *Ebrahami*, 732 F. Supp. 3d at 913 (citing *Calderon-Ramirez,* 877 F.3d at 275) (denying mandamus relief where "nothing in the record" suggested applicant's "wait time [was] any more unreasonable than [that of] other petitioners waiting in

15

the same line"); *Cohen* v. *Jaddou*, No. 21 C 5025, 2023 WL 2526105, at *6 (S.D.N.Y. Mar. 15, 2023) (adjudicating plaintiff's visa application would put her "ahead of those without the capacity to sue."). Here, this factor favors Defendants.

The sixth and final factor clarifies that a court does not have to find agency impropriety to grant relief. *Telecomms. Research. & Action Ctr.*, 750 F.2d at 80. Here, the Complaint is devoid of any allegations of bad faith or impropriety on the government's part. This factor is therefore neutral.

Weighing all the factors together, including the most important factor, rule of reason, the Court cannot find unreasonable delay. Accordingly, the APA claim is dismissed. However, the government is encouraged to provide Plaintiffs with a decision so they may plan their futures.

### C. Plaintiffs' Due Process Claim is Dismissed

Defendants argue that the Due Process claim should be dismissed because Abduljabbar does not have constitutional rights of her own, and Alhiti does not have a fundamental liberty interest in his non-citizen spouse's admittance into the Country. [19] at 14-15. The Court agrees with Defendants.

It well established that a foreign national who is not physically present in the U.S. does not have constitutional rights of their own. *Bangert v. U.S. Embassy*, No. 24 C 50272, 2025 WL 1883595, at *8 n.7 (N.D. Ill. 8, 2025) (citing *Agency for Int'l Develop. v. All. for Open Soc'y Int'l, Inc.*, 591 U.S. 430, 433 (2020)). Consequently, Ms. Abduljabbar does not have a Due Process claim under the U.S. Constitution. Turning

16

to Mr. Alhiti, the Supreme Court recently decided in *Dep't of State v. Muñoz*, "that an American citizen 'does not have a fundamental liberty interest in [their] noncitizen spouse being admitted to the country' under the Fifth Amendment." *Bangert*, 2025 WL 1883595, at *8 (quoting 602 U.S. 899, 909 (2024)). Given this Supreme Court precedent, the Due Process claim cannot survive.

Accordingly, the Due Process claim is dismissed with prejudice.

## IV. Conclusion

For the stated reasons, Defendants' Motion to Dismiss [18] is granted. Civil case terminated. Judgment to enter.

E N T E R:

Dated: March 2, 2026

_____

MARY M. ROWLAND

United States District Judge

17